No. 38,143

FRED R. CUDDY and BLANCHE M. CUDDY, the father and mother and next of kin of Geraldine Cuddy, deceased, *Appellees*, v. C. L. TYRRELL and VIVIAN MAY TYRRELL, doing business as C. L. TYRRELL OIL FIELD TRUCKING COMPANY and TRI-STATE INSURANCE COMPANY, *Appellants*.

(232 P. 2d 607)

Opinion filed June 9, 1951.

*Barton E. Griffith,* of Topeka, argued the cause, and *George R. Lehmberg,* of McPherson, was with him on the briefs for the appellants.

*Evart Mills,* of McPherson, argued the cause, and *Herbert Diets* and *Boyce P. Hardman,* both of Great Bend, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: This was an action to recover damages for the alleged wrongful death of the daughter of plaintiffs resulting from an automobile collision. Defendants Tyrrell were common carriers for the hauling of oil field equipment, under permit of the Kansas Corporation Commission, and the other defendant is their insurance carrier. The collision of the car in which the deceased was riding, with another automobile coming from the opposite direction, was alleged to have resulted from a large accumulation of mud and slime which was carried onto and allowed to remain on a black-top through highway by large, heavily loaded trucks being operated by defendants Tyrrell.

The trial of the action resulted in a hung jury, and a second trial thereof being continued until the next term of court defendants have appealed, specifying as error the orders of the lower court in overruling the demurrer to the petition, the demurrer to plaintiffs' evidence, and the motion for a directed verdict.

Stated very briefly, plaintiffs' theory of the action was that defendant truckers created a hazard when they brought onto the highway a large amount of slick, slimy mud, and that they were under obligation to remove it or else warn the traveling public of the alleged dangerous condition so created.

Defendants denied the acts of negligence complained of and alleged the death to be the result of negligence of the driver of the car in which deceased was riding, it being attributable to the deceased on account of their being engaged in a joint enterprise at the time in question, and also as the result of contributory negligence on the part of the deceased herself in failing to exercise due care for her own safety, all of the circumstances considered.

In substance, plaintiffs' evidence was as follows:

Defendants Tyrrell had been employed by a drilling company to move a torn down oil rig from one location to another. It was located at a point about one mile east of Canton on U. S. Highway No. 50, then about one-half mile north on a township road, and then about 330 feet east in a field. The moving was to be done on

November 23, 1948, and early that morning a number of trucks arrived at the scene. In order for them to get over into the field it was necessary for a caterpillar to break snowdrifts on the north and south township road up to the entrance to the field. Due to previous rains and snows the ground was soggy and muddy. Several of the trucks were equipped with tire chains. All of them had dual rear wheels. It was necessary for the caterpillar to hook on and assist some of the more heavily loaded trucks through the narrow lane leading to the township road and also on the township road, which was very muddy, to the intersection of U. S. Highway No. 50. As the trucks entered and turned west on the latter highway large quantities of mud and slime dropped off in the north traffic lane. They then proceeded on west for a distance of from 300 feet to a quarter of a mile, so as to shake off the mud, where they stopped and the chains were removed. All of the trucks had proceeded on west from the intersection by at least 3:30 or 4:00 o'clock in the afternoon. None of the mud and slime was removed from the highway and neither were any warning signs posted.

At about the time the last truck was proceeding on west several students at the University of Kansas, including the deceased, were starting to drive home to spend Thanksgiving vacation. They were riding in an automobile being driven by Elizabeth Stenzel and which was owned by her father. They stopped in Emporia for food at about six o'clock p. m. When they arrived at Marion, about 24 miles east of the intersection in question, it began to rain and mist, making it necessary to use the windshield wipers. The deceased and another girl were riding in the front seat with the driver, the deceased being in the middle. The black-top surface of U. S. Highway No. 50 was wet but not slippery. As their car, which was being driven about fifty miles per hour, approached the intersection from the east it was slowed down on account of the fact the driver observed a car coming from the west. It was about eight o'clock p. m. Immediately west of the intersection the Stenzel car suddenly swerved out of control over into the south traffic lane and crashed into the oncoming car, driven by one Klassen. As a result the daughter of plaintiffs and the other passenger riding in the front seat were killed. The Stenzel girl, who was driving, received severe injuries.

A number of witnesses who came to the scene of the crash testified as to the mud and slime in the north traffic lane immediately west of the intersection, and several described the extremely

slippery condition of that portion of the highway as a result of the film of mud which extended for about one-quarter mile west of the intersection. Another witness, who had driven over the highway from the east at about 6:30 that evening, testified as to his difficulty in holding his vehicle under control on account of the extremely slippery and "icy" condition of that portion of the highway caused by the mud and slime. After the collision warning flares were placed east of the intersection, but the evidence established that other cars had difficulty at the point in question due to the extremely slippery condition of that portion of the highway. The evidence further disclosed that other portions of the highway, while wet from the rain and mist, were not slippery.

At the conclusion of plaintiffs' evidence defendants demurred on the ground that under the pleadings, the law, and the evidence, no cause of action had been established. This demurrer was overruled.

Defendants then introduced their evidence, and while it tended to minimize the alleged hazardous condition established by plaintiffs' case, we find it unnecessary to summarize it for the reason that defendants concede the rule to be that there is no material difference between a ruling on a demurrer to evidence and a ruling on a motion for a directed verdict. We therefore proceed to the question whether the demurrer to plaintiffs' evidence was properly overruled.

Defendants contend that before plaintiffs would have a case sufficient to be submitted to the jury it was necessary to establish that defendants' trucks actually carried such huge, abnormal amounts of mud onto the highway as to create the equivalent of an obstruction or dangerous condition in the highway; that they did not remove or eliminate the situation thus created; that they did not warn the traveling public thereof; and that whatever defendants did in the use of the township road and highway was such as in law would amount to an unlawful or negligent use for which legal liability would ensue. It is further argued that nowhere in the record is there any claim or evidence tending to show that defendants were not using the road and highway for lawful purposes.

Defendants concede that one using a highway must use reasonable care to avoid injury to the person or property of others, and that the use of a highway by one for private purposes is not without limitations, such as the negligent dropping and leaving of a fence post, a pile of coal, or other such obstruction on the traveled

portion of a highway, where a subsequent traveler, without contributory negligence, might run into it to his injury; but they argue the most that was shown here was a mere incident resulting from a lawful use of a public road.

Counsel for neither side have cited any precedents or authorities going to the precise question before us, and our own limited search has failed to disclose any. Decisions on the question of defective highway conditions are hardly applicable, and neither are those having to do with injuries resulting from alleged negligent construction operations. In fact, so far as the issue here is concerned we think it must stand or fall on the particular facts established. We will not repeat the summary of plaintiffs' evidence, but, following the often repeated general rule that in ruling on a demurrer to evidence the court is to consider only that which is favorable to the one adducing it, is to disregard that which is unfavorable, and is to resolve all reasonable inferences in favor of the party adducing such evidence, we are unable to say the lower court erred in overruling the demurrer to plaintiffs' evidence. In other words, we cannot say that as a matter of law the leaving of the quantity of mud and slime on the traveled portion of the highway, in view of all the circumstances and conditions then existing, did not constitute negligence. We think it was a fair question to be submitted to the jury for determination.

We have not overlooked defendants' contentions with reference to the alleged negligence on the part of the driver of the car in which deceased was riding, and the alleged contributory negligence of deceased herself, but those matters were also properly submitted to the jury.

Plaintiffs' evidence followed in substance the allegations of the petition, and from what has been said it therefore follows the court did not err in overruling the demurrer to the petition, and neither did it err in denying the motion for a directed verdict for defendants.

And finally, it is argued that it was error to sue the insurance carrier directly, the contention being there would be no primary liability on the part of such insurance carrier for the reason that even though it be held the truckers were negligent in bringing onto and leaving the mud and slime on the highway, such acts would not be "negligent operation" of the truckers, particularly in view of the fact that several hours intervened before the collision.

The petition alleged the granting of a certificate to defendants Tyrrell by the State Corporation Commission under the provisions of G. S. 1935, 66-1,128. The obligation of defendant insurance company was that prescribed by the statute, and the statute is a part of the policy. It was obligated to pay compensation for injuries or damage resulting from the negligent operation of defendants Tyrrell. The latter were operating their trucks pursuant to the policy and permit. The death was alleged to have resulted from the negligent operations of the Tyrrells in carrying the large amount of mud and slime onto the highway and leaving it there in a position of danger to the traveling public. Under the facts before us, the fact the trucks were no longer there when the collision occurred is immaterial. The petition stated a cause of action against the insurance carrier on the theory of negligence. (See *Henderson v. National Mutual Cas. Co.*, 164 Kan. 109, 117, 118, 187 P. 2d 508.)

We find no error in the record and the orders and judgment of the lower court are therefore affirmed.